**Brian P. Berson, Esq.**

California State Bar No. 130249
Law Offices of Brian P. Berson
1000 Brannan St. #488
San Francisco, CA 94103
brian@bersonlaw.net
Telephone: (415) 788-2707
Facsimile: (415) 522-1506

Counsel for Defendant **Jose Arteaga Vasquez**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHisN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>Jose Arteaga Vasquez<br><br>　　　　　　　Defendant. | ) NO. CR 19-287 CRB<br>)<br>) **SENTENCING MEMORANDUM**<br>)<br>)<br>)<br>) Date: September 30, 2020<br>) Time: 1:30 p.m.<br>) Courtroom: THE HONORABLE<br>) JUDGE Breyer<br>) |

## I. INTRODUCTION

Mr. Arteaga Vasquez is pending sentencing after his guilty plea to Count 8 of the indictment on June 24, 2020, pursuant to a non-cooperation plea agreement. The PSR noted potential grounds for a downward variance. For the same reasons posited in the PSR, and those below, we urge the Court to sentence Mr. Arteaga Vasquez to time served. We urge the Court to find that there is no mandatory minimum in this case, freeing the Court to sentence Mr. Arteaga Vasquez pursuant to the dictates of Title 18 §3553(a),

which states that the Court shall impose a sentence "sufficient but not greater than necessary …" to promote the factors enumerated in that section.

## II. DISCUSSION

### A. Objections to the PSR

These objections are noted in the order in which they appear in the PSR.

Page 2 states that Mr. Arteaga's race is "white." Mr. Arteaga doesn't consider himself to be white, and is proud of his Latino or Latinex heritage. He asks that the PSR reflect his identity accordingly.

Paragraph 13 references methamphetamine discussions which differ from Mr. Arteaga's recollection. Counsel was unable to locate and review the undercover recordings and texts referred to in the DEA reports, with the exception of the recorded December 7, 2017 meeting in which the first such discussion occurred. In that meeting, the informant clearly states that he prefers to buy methamphetamine as opposed to the heroin that was then being transacted. He asked about whether Mr. Arteaga could provide it and, if so, how much it would cost. It takes several back and forth exchanges for Mr. Arteaga to even understand that the informant is talking about methamphetamine. He has to offer several clarifications before Mr. Arteaga said he'd call the informant back. No methamphetamine transactions thereafter

2

occurred with Mr. Arteaga, despite the informant's stated preference.

Mr. Arteaga asserts that he never had any intention of transacting methamphetamine. This interpretation is bolstered by the description in paragraph 19 of a later recorded conversation, in which Mr. Arteaga supposedly suggested a "price of $3500 for Methamphetamine. However, during the conversations, he tried to change the subject to heroin. The agents surmised Jose had easier access to heroin than methamphetamine." This supposition by the agents should be stricken from the PSR.[1] In fact, Mr. Arteaga never provided any methamphetamine. The reference to methamphetamine in paragraph 13 should therefore be deleted.

**B. Childhood History**

To say Mr. Arteaga had a difficult childhood would be a terrible understatement. In a criminal courthouse full of unfortunate childhoods, Mr. Arteaga's stands out. His parents and siblings were assassinated by being burned to death when he was three years old. PSR para. 45. He was taken in by his adoptive family and regularly threatened by his biological family's killers while he was still a child. *Id.* at paragraphs 45-48.

Defense investigator Chayra's report of his interview of Mr. Arteaga's adoptive mother is submitted as Exhibit A to this

---

[1] Counsel acknowledges that this objection was not previously made to the PSR draft's author.

pleading. She describes in harrowing detail the life that no child should have to endure, but which was forced upon Mr. Arteaga. Her opinion that, as a child, her adoptive son "as a child through his teenage years always suffered from depression … and … lived in constant fear that the men who murdered his family would come and kill him as well" needs no support from a mental health professional. Exhibit A, p.2.

Even when his biological family's killers weren't gunning for him, Mr. Arteaga was regularly beaten by his adoptive father. *PSR* at para. 51.

At 13, years old, he had to run for his life and left the country. Unfortunately, the smugglers enslaved and beat him, causing injuries from which he suffers to this day. *Id*. at paragraphs 48-49, 53.

**C. Medical Issues**

Mr. Arteaga has suffered from back pain since he was beaten by the smugglers who took him to the United States. PSR paragraphs 48, 53. Earlier this year, Mr. Arteaga was beaten by other inmates, resulting in head injuries and exasperbation to his back injuries.[2] Santa Rita Jail medical records regarding his treatment for this assault are attached collectively as Exhibit B. He did not know or identify his attackers.

---

[2] Counsel did not bring this to the PSR author's attention.

Mr. Arteaga has sought medical treatment at the jail for his back pain, but has not - at least until recently - received even over-the-counter medication to alleviate the pain. The pain has been constant, and has interfered with Mr. Arteaga's sleep.

Mr. Arteaga has also been suffering from bleeding gums and tooth aches. The prisoners are apparently provided with sub-standard tooth brushes and no dental floss.[3]

Medical records reflecting Mr. Arteaga's complaints are attached collectively as Exhibit C. Some of the records reflect that Mr. Arteaga supposedly refused treatment. Mr. Arteaga denies this. Instead, to his understanding he was being asked to sign an acknowledgement that he'd been treated adequately for his complaints, and refused to do so.

Counsel has attempted to intervene numerous times on Mr. Arteaga's behalf, but those attempts have not resulted in adequate treatment for Mr. Arteaga's back or dental issues. Exhibit D (samples of counsel's attempts to address Mr. Arteaga's medical treatment).

### D. Determination of the Appropriate Sentence

#### 1. Title 18 U.S.C. §3553(a)

According to Title 18 §3553(a), the Court shall impose a sentence "sufficient but not greater than necessary …

---

[3] Dental and back treatment issues were discussed during the PSR interview. However, counsel failed to address the dental issues in response to the draft PSR.

5

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant;
> (D) to provide the defendant with needed educational or vocational training, medical care, or other medical treatment in the most effective manner; …

§3553(a) also indicates that the Court should consider, among other things, the applicable Guidelines range for the offense of conviction. However, although the Court is required to consider the Guidelines calculations, those Guidelines carry no presumption of reasonableness, and a sentence outside the Guidelines carries no presumption of unreasonableness. *Gall v. United States*, 552 U.S. 38 (2007); *Irizarry v. United States*, 553 U.S. 708 (2008). Rather, the Court should consider all of the 18 U.S.C. §3553(a) factors along with the Guidelines in deciding on the appropriate sentence.

The §3553(a) factors, other than the Guidelines, to be considered in fashioning a sentence "sufficient but not greater than necessary," include: the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes from the defendant, and to

6

provide him with needed educational or vocational training and the kinds of sentences available.

### 2. The Nature and Circumstances of the Offense

Although he pleaded guilty to one charge, Mr. Arteaga Vasquez sold heroin to an informant and/or agent on multiple occasions, an offense not to be taken lightly. However, Mr. Arteaga was a lower level dealer despite his statements of puffery during transactions. Contrary to the statements attributed to him in PSR paragraph 18, he never had $52,000 in counterfeit or real money. Mr. Arteaga had been told by another man that he had lost $52,000 because he was given counterfeit instead of real money. This is what Mr. Arteaga was referring to in paragraph 18.

Mr. Arteaga's last charged transaction was on November 15, 2018. He wasn't arrested until August 12, 2019. PSR para. 7. When he was arrested, no drugs were seized.

### 3. Mr. Arteaga Vasquez's History and Characteristics

We have already detailed Mr. Arteaga Vasquez's sad childhood and past. The only violence in his past is what was inflicted on him, including during his current incarceration.

Mr. Arteaga's hardships did not end when he reached adulthood. He has always wanted children and family of his own, and was terribly saddened by the loss of two children to miscarriages. PSR para. 50.

**4. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment (§§3553(a)(2((A))**

Mr. Arteaga Vasquez does not contest the seriousness of the offense and the need to promote respect for the law and provide just punishment. However, Mr. Vasquez's incarceration in this case has been marked by medical and dental issues and violence. Mr. Arteaga's 13+ months of incarceration have been far more difficult than what should have occurred in our civilized society. His denial of basic medical and dental treatment was more punitive than it should have been, even had he been sentenced. It is all the more egregious, considering that it occurred while he was still presumed to be innocent.

**5. Deterrence of Criminal Conduct, Protection of the Public from Further Crimes**

There are no reasons to believe that Mr. Arteaga Vasquez requires any further imprisonment in order to deter future criminal conduct. Nor is there any reason to assume that the public requires protection from him by incarceration. He has no prior convictions. He will be deported to the country that harbors the men who killed his entire family. Mr. Arteaga has been victimized far more than any harm he has caused.

**6. Providing the defendant with Needed Medical Care or other Medical Treatment in the Most Effective Manner**

Mr. Arteaga Vasquez's medical care could not possibly be worse outside of the jail system than what it's been inside.

8

**7. Grounds for Departure and Variance**

**a. Disadvantaged Childhood and History of Abuse**

"It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens." *Santosky v. Kramer* (1982) 455 U.S. 745, 789 (Rehnquist, Jl, joined by Burger, C.J., White and O'Connor, J., dissenting). *See also United States v. Rivera*, 192 F.3d 81, 84 (2d Cir. 1999) ("It seems beyond question that abuse suffered during childhood - at some level of severity - can impair a person's mental and emotional conditions.") The PSR posits Mr. Arteaga's miserable childhood as a ground for downward variance. PSR para. 79 and Sentencing Recommendation, pp.1-2.

A sentencing reduction may also be appropriate where a defendant suffered from the early loss of a parent. *See, e.g., United States v. Collington*, 461 F.3d 805 (6th Cir. 2006) (upholding sentence of 120 months where Guidelines called for 188-235 months in drug and gun case, based partly on fact that defendant's father was murdered when he was nine-years old and his mother died of cancer two years later).

U.S.S.G. §§ 5H1.12 and 5K2.0(d)(1) treat lack of guidance as a youth and circumstances indicating a disadvantage upbringing as forbidden departure grounds. However, *Booker* and its progeny free district courts to consider these factors as part of their

9

analysis under § 3553(a). *See, e.g., United States v. Samuels,* 2009 WL 875320 (S.D.N.Y. Apr. 2, 2009) (imposing time served sentence rather than Guideline range of seventy to eighty-seven months when defendant "was raised under poor economic circumstances with abusive father addicted to crack"); *United States v. Mapp,* 2007 WL 485513 (E.D. Mich. Feb. 9, 2007) (granting variance based on defendant's upbringing where he frequently witnessed domestic violence and substance abuse by his parents until his grandmother took custody of him at age five).

**c. Health Issues**

According to PSR paragraph 52, Mr. Arteaga is 5'8" and weighs 242 pounds. As such, he is well within the CDC's obesity range. www.cdc.gov/obesity/adult/defining.html. See also, https://www.nytimes.com/interactive/2020/06/04/opinion/coronavirus-health-race-inequality.html. The CDC lists obesity as a pre-existing vulnerable condition for the coronavirus. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity.

Mr. Arteaga's back and dental issues - and the substandard care he has received for both - are noted and documented above.

A court may vary or depart downward based on the medical issues and needs of a defendant. *See* U.S.S.G. § 5H1.4. *United States v. Alemenas,* 553 F.3d 27 (1st Cir. 2009) (varying downward

10

based on defendant's chronic neck pain, and mental and emotional condition); *United States v. Duhon,* 541 F.3d 391 (5th Cir. 2008) (upholding probation for possessing fifteen images of child pornography, despite Guidelines range of twenty-seven to thirty-three months, in light of first-time offender's need to continue medical treatment with his psychologist).

### III. CONCLUSION

Mr. Arteaga Vasquez sold drugs, and has suffered plenty for his actions. He is non-violent, but has suffered much violence. There are ample grounds for a downward variance to time served. Further incarceration will harm him without any benefit to society. It will only delay his deportation, without just cause.

For the foreseeing reasons, we urge the Court to sentence Mr. Arteaga Vasquez to time served.

Date: September 23, 2020

Respectfully Submitted,
_____//s//_____
BRIAN P. BERSON
ATTORNEY FOR Jose Arteaga Vasquez

11